UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

SEAN GELB

    Plaintiff,                                    Case No.:

v.

JAMES COHAN GALLERY, LLC,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL

THE PLAINTIFF, SEAN GELB, through his undersigned attorney, sues the DEFENDANT, JAMES COHAN GALLERY, LLC, and alleges as follows:

1. This is a Complaint seeking damages for Destruction of Personal Property, Breach of Contract, Conversion, and Breach of Bailment.

## The PARTIES

2. The Plaintiff, SEAN GELB, ("GELB"), is a resident and domiciliary of the State of Florida.

3. The Defendant, JAMES COHAN GALLERY, LLC, ("GALLERY" or "DEFENDANT"), is a corporate entity organized and conducting business in the State of New York with its principal business address at 533 West 26th Street, New York, NY, 10001, and concurrently operating premises in Shanghai, China.

## JURISDICTION AND VENUE

4. This is an action involving the diversity of citizenship of the parties, and for damages in excess of $75,000.00 pursuant to 28 U.S.C. § 1332.

5. At all material times, the DEFENDANT maintained substantial minimum contacts with the forum state, including but not limited to conducting and soliciting business, such that the DEFENDANT could reasonably anticipate being haled in to the forum state and does not offend the Court's traditional notions of fair play and substantial justice.

6. Based upon the foregoing, this Court has personal jurisdiction and subject matter jurisdiction over the matter sub judice. Therefore, jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

7. At all material times, GELB is the owner of a unique property identified as a sculptural art work; Untitled (Specimens), 1996 a/k/a Specimen Case created by internationally acclaimed artist, Roxy Paine, ("CASE").

8. On or about February 1, 2011 the parties entered in to a consignment agreement for the sale of the unique CASE.

9. In addition to owing a duty of care for GELB's property, the Consignment agreements drafted by the GALLERY contractually accept responsibility "wall to wall" for the unique CASE. See, Exh. "A."

10. On or about February 3, 2011, the GALLERY voluntarily took in to its possession and exclusive care, custody, and control, the unique CASE in the pristine and unaltered condition it had been maintained by GELB or GELB's agents since its inclusion in the Artist's solo exhibition from March 15-April 26, 1997.

11. The unique CASE is described as:

> Specimen Case, 1996[1]
> Bondo, Pins, Mahogany, and Glass
> 48 x 60 inches (122 x 152.4cm)

(See, Exh. "B")

12. The unique CASE has been the subject of written monographs focusing on the artist's successful career and works, (see, Exh. "B"), a doctoral dissertation, and critical analyses.

13. Subsequent to its initial exhibition the unique CASE has been photographically documented in two widely distributed texts in the pristine state that it was received by the GALLERY[2].

---

[1] The year of execution for the CASE has been erroneously reported at times as 1995.

[2] On or about March 1, 2011, GELB viewed and photographed the unique sculpture while in the GALLERY's exclusive care and custody, ascertaining that the art was received in pristine condition and free of any damage. See, Exh. "C."

14. On or about June 24, 2011, the GALLERY provided GELB with an Agreement renewing the consignment.

15. Again, in January, 2012, the GALLERY aggressively pursued renewal of the consignment and provided GELB with a new Consignment Agreement executed on or about January 13, 2012.

16. The GALLERY is the exclusive international dealer for the artist, Roxy Paine, and is solely responsible for establishing the prices and market values for unique works by the artist.

17. The Artist's unique works have sold for as much as One Million Dollars.

18. The Consignment renewal drafted by the GALLERY and executed on or about January 13, 2012 increased the fair market value of the unique CASE to $125,000.00 (One Hundred Twenty-Five Thousand Dollars).

19. However, on or about February 2, 2012, the GALLERY posted the CASE on the Internet for international sale at the VIP Art Fair and again increased its fair market valuation of the unique CASE to $150,000.00 to $200,000.00, (Two Hundred Thousand Dollars).

20.     The VIP Art Fair is an internet art sales fair created by the DEFENDANT for the purpose of providing global galleries with a venue for selling art works internationally by reaching out through the world wide web, "Connecting the World's Collectors to Leading Art Dealers Online." See, www.vipartfair.com

21.     During the entirety of the consignment period, the unique CASE remained in the exclusive care and custody of the GALLERY.

22.     On or about March 6, 2012, the Parties mutually agreed to return the CASE to GELB's possession.

23.     On or about March 6, 2012, the GALLERY sent GELB an e-mail assuring that the CASE was in the same pristine condition that it had been received more than a year earlier.

24.     However, on or about March 8, 2012, before the CASE left the GALLERY's care and custody, the GALLERY telephoned GELB and left voice mail admitting that "while in our care" the CASE had been damaged.

25.     On or about March 8, 2012 the GALLERY followed-up its telephone message with an e-mail reconfirming that the CASE was damaged by the DEFENDANT, twice acknowledging and accepting culpability by admitting responsibility:

> **"To follow up on my phone message, I sincerely regret to inform you that *Specimens* has suffered damage while in our care . . . We recognize that this damage occurred under our care . . ."**

(Emphasis added by DEFENDANT, see Exh. "D").

26. The e-mail from the GALLERY includes a photographic image of the damage, (see, Exh. "E"), which demonstrates a segment of wood that has been permanently and irreversibly lost.

27. The e-mail concludes with an apology to GELB for the damage caused by the GALLERY to the unique CASE.

28. Despite the obvious loss of wood and substantial damage to the integrity of the unique CASE, the GALLERY attempts to minimize the damage and erroneously characterizes the substantial damage and loss as a "dent."

29. A conservator's examination and report obtained by the GALLERY unequivocally asserts that it's mishandling of the unique CASE has caused permanent and irreversible loss of wood.

30. The irreversibly damaged wood is an integral part of the unique CASE created by the artist.

31. As the direct and proximate result of the damage caused by the GALLERY, the unique character and quality of the formerly pristine art work has been forever lost or destroyed.

32. No attempt to repair the damage to this unique work of art can ever eliminate the scars and stigma of restoration or conservation.

33. No attempt to repair the damage to this unique work of art can ever restore its formerly pristine condition or reestablish the value of the artwork in its undamaged condition.

34. Without its formerly pristine character and quality the art has been irreversibly damaged and irreversibly devalued.

35. Due to the unique character and quality of the CASE, and the irreversible nature of the damage and devaluation to the integrity of the art work, GELB is entitled to fair market value at the time of loss, established and published by the GALLERY as $150,000.00 to $200,000.00, in its professional capacity as the artist's exclusive representative.

36. As the direct and proximate result of the damage caused to the CASE by the GALLERY, GELB has been permanently deprived of the full value of the unique property.

37. All conditions precedent to this cause of action have been met or waived.

## COUNT I - DESTRUCTION OF UNIQUE CHATTEL

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

38.     The GALLERY accepted and owed a duty of care for the unique property belonging to GELB.

39.     The GALLERY destroyed GELB's property by irreversibly damaging the unique property and substantially and immeasurably diminishing its value.

40.     The GALLERY has admitted its culpability for the destruction of GELB's unique property.

41.     GELB is entitled to recover fair market value of the unique property at the time of loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his lost property, together with costs, pre and post judgment interest from the date of loss, and any other award this Honorable Court deems just and proper.

## COUNT II - BREACH OF CONTRACT

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

42.     The GALLERY contracted with GELB to accept "wall to wall" responsibility for his unique property.

43. The GALLERY destroyed GELB's property by irreversibly damaging the unique property and substantially diminishing its value.

44. The GALLERY admitted its culpability for the destruction of GELB's unique property.

45. GELB demanded compensation for the loss of his unique property.

46. JAMES COHAN, an owner and operator of the GALLERY, declined to compensate GELB for his loss, instructed GELB via e-mail to cease communications with the GALLERY, and refused to discuss the GALLERY's liability for GELB's loss.

47. The GALLERY breached its contract with GELB by accepting responsibility for GELB's property but failing to compensate the loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his lost property, together with costs, pre and post judgment interest from the date of loss, and any other award this Honorable Court deems just and proper.

## COUNT III - CONVERSION

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

48. The GALLERY accepted possession of GELB's unique property.

49. The GALLERY owed a duty to GELB to maintain and protect his unique property from damage.

50. The GALLERY breached its duty of care and destroyed GELB's property by irreversibly damaging the unique property and substantially diminishing its value.

51. The GALLERY's destruction of GELB's unique property is in derogation to GELB's possessory rights and has irreversibly and permanently deprived GELB of the value of his unique property.

52. As the direct and proximate result of the GALLERY's destruction of GELB's unique property, the property has been converted.

53. The remedy for conversion of unique property is an award of Fair Market Value of the property at the time of loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his lost property, together with costs, pre and post judgment interest from the date of loss, and any other award this Honorable Court deems just and proper.

## COUNT IV - BREACH OF BAILMENT

The Plaintiff realleges and reavers Paragraphs 1 - 37 as if fully set forth herein.

54. GELB entrusted the GALLERY with possession of his unique property.

55. The GALLERY accepted possession of GELB's unique property and responsibility for maintaining and protecting his unique property from damage.

56. The consignment agreement guaranteed the return of the property in the event that a sale did not occur by expiration or termination of the agreement.

57. While arranging for the return and transport of GELB's unique property, the GALLERY destroyed the property by causing irreversible damage and substantial devaluation of the property.

58. The GALLERY owed GELB a duty as bailee to maintain and protect his unique property from damage.

59. The GALLERY breached its duty and destroyed GELB's property.

60. The remedy for breach of bailment with destruction of unique property is an award of Fair Market Value of the property at the time of loss.

WHEREFORE, Plaintiff, GELB, demands judgment against the Defendant and entry of an Order awarding GELB fair market value for his lost property, together with costs, pre and post judgment interest from the date of loss, and any other award this Honorable Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

61.     The Plaintiff demands trial by jury of all issues triable as by right.

Dated:      April 5, 2012

                                        Respectfully submitted,



                                        By: __/s/_Brooke Terpening_____
                                            Brooke Terpening, Esq.
                                            FBN: 59574
                                            The Lenamon Law Firm
                                            100 N. Biscayne Blvd, Suite 3070
                                            Miami, FL 33132
                                            Phone: 305.373.9911 x109
                                            Fax: 786.425.2380
                                            E-mail: brooke@lenamonlaw.com

## CONSIGNMENT AGREEMENT

**Date:** January 11, 2012

**Consignee:** James Cohan Gallery
533 West 26th Street
New York, NY, 10001

**Consignor:** Sean Jason Gelb, MD, JD
55 SE 6th Street, Suite 3708
Miami, FL 33131
305.773.0917
seangelbmdjd@aol.com

**Work(s) consigned:**
**ROXY PAINE**
*Specimens*, 1996
Bondo, Pins, Mahogany, Glass
48 x 60 inches
**Retail price:** $ 125,000
**Net to Consignor:** selling price less 15% commission to JCG
**Minimum net to Consignor:** $ 92,500
**Consignment period:** January 17 – June 1, 2012

**ROXY PAINE**
*Study for Plug-In Painting # 2*, 1995
Bondo, Pins, Wood, Glass
16 1/2 x 19 x 3 inches
**Retail price:** $ 24,000
**Net to Consignor:** selling price less 15% commission to JCG
**Minimum net to Consignor:** $ 20,400
**Consignment period:** January 17, 2012 – January 15, 2013

**ROXY PAINE**
*Department of Brushstrokes*, 1996
Pencil and Gouache on paper
8 1/2 x 10 inches
**Retail price:** $ 16,000
**Net to Consignor:** selling price less 15% commission to JCG
**Minimum net to Consignor:** $ 13,600
**Consignment period:** January 17, 2012 – January 15, 2013

**Terms:**

1) The listed work is received on consignment from Sean Jason Gelb (the Consignor) for the period indicated.

2) James Cohan Gallery (the Consignee) will be responsible for round-trip shipping costs of the work. The Consignee agrees to assume wall-to-wall insurance for the net price of the above-mentioned work for the duration of the consignment. A certificate of insurance will be provided on request.

3) In the event of a sale, the Consignor is to receive the listed net(s). Title does not pass until Consignee has received payment in full. The Consignee will notify the Consignor of a sale. Unless the Consignor has been otherwise notified of extenuating terms deal and has approved those terms, the Consignor will receive payment within 30 days.

4) The Consignor will be notified on a case-by-base basis of all offers to museums and other collecting institutions and the duration and payment terms that may accompany those deals.

5) The Consignee will ensure that the works are being offered and not taken off the 'market' for any reason except towards a potential sale. This will be done in good faith.

6) The work is not to be sent out on approval without prior approval of the Consignor. The signature below constitutes agreement to the consignment of the listed work under the terms and conditions stated on all pages of this form. Any amendment must be made in writing and signed by authorized agents of the James Cohan Gallery and Sean Jason Gelb.

_____     1/11/2012
James Cohan Gallery                 Date

_____     1/13/12
Sean Jason Gelb, MD, JD             Date

# James Cohan Gallery



**ROXY PAINE**
*Specimen Case*, 1996
Bondo, pins, mahogany and glass
48 x 60 inches (122 x 152.4cm)

# James Cohan Gallery

## FACT SHEET

**ROXY PAINE**
*Specimen Case*, 1996
Bondo, pins, mahogany and glass
48 x 60 inches (122 x 152.4cm)
*Subject to prior sale*

**Provenance:**
Roxy Paine Studio, Brooklyn, NY
Ronald Feldman Fine Arts, New York, NY
Private Collection, New York, NY and Miami, FL

**Bibliography:**
Heartney, Eleanor. *ROXY PAINE.* Prestel Publishing, New York and Munich, 2009.
Ketner, Joseph D and Lynn Herbert, ed. *Roxy Paine: Second Nature.* Contemporary Arts Museum, Houston and the Rose Art Museum, Brandeis University, Waltham, 2002.

*"In earlier works including Specimen Case, the artist disssected the brushstrokes of a painting, the supreme mark of individual expression. [Paine] molded them into individually sculpted components, as if producing a kit ready to assemble into a painting. Whether they are the painting, drawing, or scupture machines – the artist employs them to divorce the act of creation from direct human gesture and touch, and casts doubt upon the value of the unique art object."*

- **Joseph D. Ketner, "Introduction,"** *Roxy Paine: Second Nature*, **Contemporary Arts Museum, Houston and the Rose Art Museum, Brandeis University, 2002**




| | |
|---|---|
| Subj: | **Roxy Paine - Specimens** |
| Date: | 3/8/2012 7:41:41 P.M. Eastern Daylight Time |
| From: | ksavage@jamescohan.com |
| To: | seangelbmdjd@aol.com |

Dear Dr. Gelb,

To follow up on my phone message, I sincerely regret to inform you that *Specimens* has suffered damage while in our care.

There is a 3/4" long dent on the bottom rail of the case. Please see the attached detail.

As you know, the work has been booked for collection by a trucker. Collection will be next week. I can certainly hold off on booking with the trucker if you or your agent would like to view the work.

We recognize that this damage occurred under our care, and we are prepared to repair the damage at our cost. I have already consulted with the conservator who works with one of our artists and he confirmed that he can repair it to match, even given the age of the vintage case.

No action will be taken without your approval, of course.

Again, I sincerely apologize that we weren't able to sell the painting on her behalf and moreover that this damage has occurred. As you know, this is not how we like to do business.

I have checked *Study for Plug-In Painting #2* and *Department of Brushstrokes* and there has been no change in condition on either work.

All the best,

Kat Savage
Registrar
James Cohan Gallery
533 West 26th Street
New York, NY 10001
T: 212.714.9500
F: 212.714.9510
E: ksavage@jamescohan.com
www.jamescohan.com