UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 242 PARTNERS, L.P., D/B/A JAMES COHAN GALLERY AND AXA ART INSURANCE CORPORATION,<br><br>       Plaintiffs,<br><br>-against-<br><br>SEAN GELB,<br><br>       Defendant. | Case No:  12 CV 2561-HB<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN
ORDER ENJOINING DEFENDANT SEAN GELB FROM PROSECUTING A
DUPLICATIVE SECOND-FILED ACTION IN FLORIDA**

The Defendant, SEAN GELB, ("GELB") by and through undersigned counsel, h this Honorable Court to enter an order denying Plaintiffs' Motion for An Order Enjoining Defendant Sean Gelb From Prosecuting a Duplicative Second-Filed Action in Florida.  In support, the Defendant asserts as follows:

**FACTUAL AND PROCEDURAL HISTORY**

1. On January 13, 2012, in Miami, Florida, GELB executed and entered into the Consignment Agreement with the James Cohan Gallery ("GALLERY") that was negotiated by phone and e-mail.  GELB then returned the executed Consignment Agreement to the GALLERY via e-mail.

2. On March 8, 2012, the GALLERY informed GELB that it caused damage to his unique sculpture.

1

3. On April 2, 2012, GELB sent the GALLERY a demand letter that included a draft copy of an unfiled complaint and informing of his intent to bring suit for damages on April 5, 2012 in the United States District Court in the Southern District of Florida.

4. On April 3, 2012, Plaintiff, 242 Partners, LP ("242"), and its alleged insurer and Co-Plaintiff, AXA Insurance ("AXA"), raced to this Court to file their declaratory action to avoid the Florida forum of GELB's lawsuit for damages against the GALLERY.

5. On April 4, 2012, the Plaintiffs contacted GELB's undersigned attorney via e-mail at the close of business to inform that they had filed this action; however, they elected not to provide a copy of their lawsuit and the cited case style was incorrectly transposed. The Complaint did not appear on the docket until April 5, 2012.

6. On April 5, 2012, GELB filed his previously noticed law suit for damages against the GALLERY in the United States District Court for the Southern District of Florida.

7. GELB's Florida complaint does not name AXA, as AXA did not damage GELB's property; and, GELB has no contract or privity with AXA.

8. Plaintiffs' claim in their Declaratory Action that the Consignment Agreement between GELB and the GALLERY binds GELB to the limitations of the insurance contract, which exists only between 242 and AXA. In fact the Consignment Agreement only informs GELB that the GALLERY assumes liability and will be partially indemnified by an unidentified insurer.

9. Nowhere in the Consignment Agreement is 242 identified as a party or mentioned. The Agreement, drafted by the GALLERY, only lists six (6) brief terms. It is noteworthy that the Agreement:

    a. Does not limit GELB's rights to recovery in the event of damage to his SCULPTURE;

    b. Does not create or ratify any contractual relationship between GELB and AXA. Further, AXA is never named; and,

    c. Does not require that GELB must accept the SCULPTURE back in damaged, restored, repaired, or otherwise value-diminished condition in the event the Gallery causes damage to his SCULPTURE.

    d. There is no choice of law, venue, or forum specified.

10. The Declaratory Action attempts to limit GELB's recovery for damages from the GALLERY by application of the limits of the GALLERY's insurance policy with AXA.

11. GELB was unaware of the identity of the GALLERY'S insurer until after GELB's SCULPTURE was damaged.

12. GELB first learned of the apparent existence of an entity known as 242 after he was advised of the lawsuit and his attorney was able to locate the Plaintiffs complaint on PACER.

## **MEMORANDUM OF LAW**

The Plaintiffs seek a remedy against GELB pursuant to 28 U.S.C. 2202, the Declaratory Judgment Act.  Their cause of action seeks to limit the tortfeasor GALLERY's liability to GELB, by application of its alleged insurance policy with AXA, not the Consignment Agreement. GELB is not a party to their Insurance Contract.  The Plaintiffs now seek to enjoin GELB from prosecuting and recovering his actual damages from the admitted tortfeasor in the United States District Court for the Southern District

of Florida, where the substantive case is pending.  The basis of the Plaintiffs' Motion is that, subsequent to notice of GELB's intent to sue, which included a draft of his Complaint, that the Plaintiffs filed their declaratory action first. However, in cases were identical facts and law have been adjudicated within Second Circuit, courts have not ruled in the Plaintiffs' favor. See, e.g., Factors Etc., Inc. v Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978)(abrogated on other grounds); Vargas v. Boston Chicken, Inc., 269 F.Supp.2d 92 (E.D.N.Y. 2003); Sturge v. Diversified Transport Corp., 772 F.Supp. 183 (S.D.N.Y. 1991); Great Am. Ins. Co. v Houston Gen. Ins. Co., 735 F.Supp. 581,(S.D.N.Y. 1990).

**"The first-filed rule should not be applied mechanically**." Great Am. Ins. Co. v Houston Gen. Ins. Co., 735 F.Supp. 581, 585 (S.D.N.Y. 1990) (emphasis added) (citing Tempco Elec. Heater Corp. v Omega Eng'g, Inc., 819 F.2d 749-750 (7th Cir. 1987)). "When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiff's chosen forum." Id.

Federal courts of New York have affirmatively asserted that "[r]ejection of the first-filed rule . . . is supported by the general principles of the Declaratory Judgment Act. A declaratory judgment is an opportunity for a party to a ripe legal controversy to have that controversy resolved by a Court promptly rather than waiting for the opposing party, with the ripe substantive right to sue, to choose to exercise its rights to judicial intervention, particularly where the delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff." Id. "**In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the**

**forum of choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."** Great Am. Ins. Co., 735 F.Supp. at 586. (emphasis added); see also Factors Etc., Inc. v Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978); Sturge v. Diversified Transport Corp., 772 F.Supp. 183 (S.D.N.Y. 1991);Vargas v. Boston Chicken, Inc., 269 F.Supp.2d 92 (E.D.N.Y. 2003); Bravia Capital Partners, Inc. v. Fike, 2010 WL 3359470 (S.D.N.Y. Aug. 25, 2010)(acknowledging established rules of law but factually distinguishing itself because no other actions were pending in another court).

There has been no a delay or prejudice to the tortfeasor, GALLERY, or its alleged insurer, AXA.  GELB not only provided notice and a date certain that he would file a law suit; a courtesy copy of his Complaint was enclosed. The date certain, April 5, 2012, was less than one month after the damages were reported to GELB by the GALLERY.  On Page 2 of Plaintiffs' Motion to Enjoin, they concede that they were trying to beat GELB to the courthouse: "On April 2, 2012, Gelb threatened to commence litigation against the Gallery . . . [a]long with the settlement agreement, Gelb included a draft complaint against James Cohan Gallery, LLC." Continuing on the next page, (Page 3), the Plaintiffs admit, "On [the following day], Plaintiffs filed the New York Lawsuit."  GELB informed the Plaintiffs of his intent to file suit, which immediately triggered their cause of action, *sub judice*.  This Court has ruled that when a notice letter triggers a declaratory action, it "militates dismissal" of the declaratory action. See id. Quoting Supreme Court Justice Brennan: "'**[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.**'" Great Am. Ins. Co., 735 F.Supp. at 585.

The Florida suit was not filed for the purpose of forum shopping as argued by the Plaintiffs after the fact. GELB's Complaint is filed in his domiciliary state where the

5

Consignment Agreement was formed and payment was to be delivered. The Florida Complaint was filed on April 5, 2012, exactly as the Plaintiffs were informed in the April 2, 2012 demand letter. But for the advance courtesy and notice to the Plaintiffs who raced to file on April 3, 2012, the Florida Complaint would have been first-filed. James Cohan Gallery has admitted liability and would suffer no prejudice by allowing the Florida suit to adjudicate the damages which are established by the Consignment Agreement or subsequent acts for valuation at the time of loss.

The Plaintiffs' underlying cause of action is alleged pursuant to 28 U.S.C. section 2202. The Plaintiffs have created a previously non-existent cause of action in New York, seeking to limit GELB's right to obtain recovery for damages to his unique sculpture by application of an Insurance Contract that exists between AXA and 242 Partners. GELB is not a party to the Insurance Contract. And, as argued in his Motion to Dismiss, the New York Insurance law, section 3402, supersedes the Federal Remedy and does not recognize any privity between GELB and AXA until thirty (30) days after a judgment has been entered in favor of GELB in an action against the GALLERY, and GELB has been denied settlement by the GALLERY's insurer. See, NAP, Inc. v. Shuttletex, Inc., 112 F.Supp.2d 369, 378 (S.D.N.Y. 2000).

Injured parties not in privity only have standing to bring a declaratory action because §3420 of the New York Insurance Statutes creates an express exception; and, that exception is not a legal contingency until after the *injured party* obtains a judgment against the insured tortfeasor. See id. The only present cause of action available to the Plaintiffs is between themselves to determine the Insurer's, AXA's, liability to its Insured, 242 Partners. The Plaintiffs Motion to Enjoin summarizes, "AXA, the Gallery's

6

insurer, believes that the damage constitutes a partial loss under the insurance policy it issued . . ." The alleged policy exists exclusively between AXA and the GALLERY. GELB is not a party to this limitation action, it is between the Plaintiffs. In short, AXA can bring a declaratory action against 242, not GELB.

The statutory prerequisites must be met before any declaratory action involving GELB can be addressed. NAP, Inc., 112 F.Supp.2d at 373. The New York Insurance Statute, §3420, does not carve out any legal exception which would grant the insured or the insurer the power to limit GELB's lawful right to seek damages against the tortfeasor; and, the New York Insurance Statute does not carve out an exception for the insurer, AXA, to use the Consignment Agreement to bring an action against GELB or limit his right to seek damages from the tortfeasor GALLERY.

GELB's Florida Complaint seeks tort remedy for the GALLERY's admitted damages to his unique sculpture. The Plaintiffs' completely dissimilar action seeks a declaration of the limits of the insurer, AXA's, contractual liability to its insured, 242. GELB is not a party to their contract. Yet, the parties seek to impose the insurance contract limitations on GELB. The GALLERY drafted and delivered to GELB a Consignment Agreement which was executed in Miami, Florida. The Consignment Agreement makes no mention of AXA, no limits on the GALLERY's liability to GELB, and no caveat that GELB must accept return of his unique sculpture in damaged, repaired, restored, or otherwise value-impaired condition. Further, the Plaintiffs' cause of action fails to address GELB's actual damages or GELB's loss of value relating to the damage caused by the GALLERY to his unique sculpture.

GELB's action in Florida is the only substantive matter which directly addresses the damages to his property. The Plaintiffs action seeks to establish the limitations of the Insurer, AXA's, liability to 242 or the GALLERY. The Plaintiffs have admitted to liability and the issue that remains in GELB's Florida case is the value of those damages. Notably, there is no term in the Consignment Agreement between GELB and the GALLERY that requires that GELB accept the return of his unique sculpture in repaired, restored, damaged, or value-diminished condition. The GALLERY damaged the sculpture. Therefore, the GALLERY bought the sculpture for fair market value as established by the GALLERY. The GALLERY can then repair the sculpture in any way it sees fit to obtain salvage value for the damage they caused. AXA may seek to limit obligations to indemnify the GALLERY, but that is a matter which exists solely between the Plaintiffs and not lawfully addressed by their Complaint against GELB.

## CONCLUSION

The Plaintiffs' Complaint is intended to establish a frivolous bookmark action in an attempt to win the race to the courthouse and gain a forum advantage. The Defendant, SEAN GELB, respectfully requests that this Honorable Court enter an order denying the Plaintiffs Motion to Enjoin his Prosecution in Florida; and, based on the law cited herein and in his Motion to Dismiss, enter an Order dismissing or abating the instant action until the matter has been properly adjudicated in that matter pending before the United States District Court in the Southern District of Florida.

Wherefore, for all the reasons fully set forth above, the Motion to Enjoin should be denied because the Declaratory Action requested should properly be between the insured and the insurer to determine the extent of coverage that AXA's policy provides to 242.

Dated: April 30, 2012

                                  Respectfully submitted,

                                  By: __/s/  Brooke Terpening_____
                                  Brooke Terpening, Esq.
                                  FBN: 59574
                                  The Lenamon Law Firm
                                  100 N. Biscayne Blvd, Suite 3070
                                  Miami, FL 33132
                                  Phone: 305.373.9911 x109
                                  Fax: 786.425.2380
                                  E-mail: brooke@lenamonlaw.com