```
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 242 PARTNERS, L.P., d/b/a James Cohan Gallery, and AXA ART INSURANCE CORPORATION,<br><br>*Plaintiffs,*<br><br>-against-<br><br>SEAN GELB,<br><br>*Defendant.* | ECF Case<br><br>Case No. 12-CV-2561 (HB) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' DECLARATORY ACTION**

Dated: May 11, 2012

LYNN & CAHILL LLP
John R. Cahill
Ronald W. Adelman
58 West 40th Street
New York, NY 10018

*Attorneys for Plaintiffs
242 Partners, L.P. and
AXA Art Insurance Corp.*

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| STATEMENT OF FACTS | | 2 |
| ARGUMENT | | 3 |
| I. | This Court has Personal Jurisdiction Over Gelb | 3 |
| II. | This Court has Subject Matter Jurisdiction Over This Action | 6 |
| III. | Gelb was Properly Served with the Summons and Complaint Under New York Law | 7 |
| IV. | There is No Basis to Dismiss Plaintiff's Complaint under Rule 12(b)(6) | 8 |
| | A. Plaintiffs Have Standing to Seek a Declaratory Judgment Against Gelb | 9 |
| | B. New York Insurance Law § 3420 Does Not Apply to this Matter | 9 |
| | C. The Later-Filed Florida Lawsuit is Not a Basis for Dismissing This Action | 10 |
| CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

## CASES

*800-Flowers, Inc. v. Intercontinental Florist, Inc.,*
860 F. Supp. 128 (S.D.N.Y. 1994) ..............................................................................11

*Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.,*
No. 06 Civ. 6510, 2010 WL 2813617 (S.D.N.Y. July 16, 2010) .............................. 3, 4

*Beacon Constr. Co. v. Matco Elec. Co.,*
521 F.2d 392 (2d Cir. 1975)......................................................................................... 6

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................................................................... 3

*Best Van Lines v. Walker,*
490 F.3d 239 (2d Cir. 2007)...................................................................................... 3, 4

*Brown v. Mitchell-Innes & Nash, Inc.,*
No. 06 Civ. 7871, 2009 WL 1108526 (S.D.N.Y. Apr. 24, 2009)............................... 4, 5

*Charnin v. Cogan,*
673 N.Y.S.2d 134 (1st Dep't 1998)............................................................................... 8

*Daewoo Int'l (America) Corp. v. Orion Eng'g and Serv. Inc.,*
No. 02 Civ. 8809, 2003 WL 22400198 (S.D.N.Y. Oct. 20, 2003) ............................... 5

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.,*
818 N.Y.S.2d 164 (N.Y. 2006) .................................................................................... 5

*Erickson v. Pardus,*
551 U.S. 89 (2007)........................................................................................................ 8

*Factors Etc., Inc. v. Pro Arts, Inc.,*
579 F.2d 215 (2d Cir. 1978)........................................................................................ 11

*Fed. Home Loan Mortg. Corp. v. 666 St. Nicholas Assoc.,*
No. 94 Civ. 4537, 1995 WL 628998 (S.D.N.Y. Oct. 25, 1995) ................................... 7

*Great American Ins. Co. v. Houston Gen. Ins. Co.,*
735 F. Supp. 581 (S.D.N.Y. 1990) ............................................................................. 11

*Hunt v. Washington State Apple Advertising Comm'n,*
432 U.S. 333 (1977)..................................................................................................... 6

*Itakura v. Primvera Galleries Inc.*,
  No. 08 CV 9027, 2009 WL 1873530 (S.D.N.Y. June 30, 2009) ........................................ 8

*JLB Equities, Inc. v. Ocwen Fin. Corp.*,
  131 F. Supp. 2d 544 (S.D.N.Y. 2001) .............................................................................. 5

*Lang v. Hanover Inc. Co.*,
  787 N.Y.S.2d 211 (N.Y. 2004) ....................................................................................... 10

*McCormack v. Goldstein*,
  611 N.Y.S.2d 185 (1st Dep't 1994) ............................................................................... 7, 8

*Miller v. Holtzbrinck Publishers, LLC*,
  No. 08 Civ. 3508, 2009 WL 528620 (S.D.N.Y. Mar. 3, 2009) ........................................ 3

*Ontel Products, Inc. v. Project Strategies Corp.*,
  899 F. Supp. 1144 (S.D.N.Y. 1995) ................................................................... 10, 11, 12

*Parke-Bernet Galleries, Inc. v. Franklyn*,
  308 N.Y.S.2d 337 (N.Y. 1970) ..................................................................................... 4, 5

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) ............................................................................................ 3

*U.S. v. Aetna Cas. & Sur. Co.*,
  338 U.S. 366 (1949) ........................................................................................................ 9

## STATUTES

28 U.S.C. § 1332 ................................................................................................................ 6, 7

28 U.S.C. § 2201 ................................................................................................................... 3

FED. R. CIV. P. 12 ...................................................................................................... 1, 3, 8, 9

FED. R. CIV. P. 17 ................................................................................................................... 9

N.Y. C.P.L.R. § 301 (McKinney 2009) ............................................................................ 5, 6

N.Y. C.P.L.R. § 302 (McKinney 2009) ............................................................................ 3, 4

N.Y. C.P.L.R. § 308 (McKinney 2009) ............................................................................ 7, 8

N.Y. INS. LAW § 3420 (McKinney 2009) ........................................................................ 9, 10

Plaintiffs 242 Partners, L.P., d/b/a James Cohan Gallery (the "Gallery")[1] and AXA Art Insurance Corporation ("AXA"), respectfully submit this memorandum of law in opposition to Defendant Sean Gelb's ("Gelb") motion to dismiss Plaintiffs' Complaint.

## PRELIMINARY STATEMENT

This dispute ultimately concerns whether Gelb can recover damages in excess of his actual damages in the absence of a contractual provision expressly granting him such a remedy. Plaintiffs contend that Gelb, both as a consequence of the consignment agreement and general principles of tort and contract law, is limited in his remedy to the actual damages that he suffered from the minor damage to his artwork. Gelb, on the other hand, relying on the gift store saying "You Break It You Bought It," contends that even minor physical damage to the artwork obligates the Gallery (and ultimately AXA) to pay him for what he claims to be the full value of the work: $200,000.

The only issues before the Court on this motion, however, are whether action should be dismissed pursuant to Fed. R. Civ. P. 12(b) for lack of personal and subject matter jurisdiction, for insufficient service of process and for failure to state a claim on which relief can be granted. For the reasons stated below, the Plaintiffs have easily met the standard applicable to each issue.[2]

---

[1] James Cohan Gallery is a d/b/a name registered and used by Plaintiff 242 Partners, L.P., a New York limited partnership. Based on his papers, it appears that Gelb somehow believes (incorrectly) that there are two separate entities, the "GALLERY" and "242." In fact, there is only one. Whether or not Gelb was aware of the name of 242 Partners, he knew that James Cohan Gallery was part of a corporate entity.

[2] Subsequent to the commencement of this action, Gelb filed a mirror-image lawsuit in Florida. For the reasons addressed below (at pp. 10-12), the existence of a parallel action has no bearing on whether this action should be dismissed under Rule 12(b).

1

## STATEMENT OF FACTS

On or about January 28, 2011, Gelb consigned several artworks to the Gallery to be offered for sale at the Gallery's New York location. (*See* Declaration of James Cohan dated April 12, 2012 ("Cohan Dec."), ¶ 3.) This consignment was renewed periodically, most recently on January 11, 2012. (Complaint, annexed to the Declaration of Ronald W. Adelman, dated May 11, 2012 ("Adelman Dec."), **Exhibit A**, ¶ 8.) The consignment agreement provided in relevant part that the Gallery "agrees to assume wall-to-wall insurance for the net price of the above-mentioned work for the duration of the consignment." (Complaint ¶ 9; Adelman Dec., **Exhibit B**.)

The artworks remained at the Gallery, in New York, until the consignment agreement was terminated in March 2012. (Cohan Dec. ¶ 5.) Upon inspection of the artworks at the termination of the consignment agreement, employees of the Gallery discovered that one artwork had suffered minor physical damage while at the Gallery in New York (the "Work"). (Complaint ¶ 12.) The Gallery contacted an art conservator who estimated that that the damaged portion could be repaired at an estimated cost of $150 to $350. (Complaint ¶ 14.)

The Gallery promptly alerted Gelb when it learned of the minor damage to the Work and informed him that, with his approval, they would pay for a conservator to repair the damaged portion of the Work. (Complaint ¶ 14.) Gelb refused this offer and instead demanded that the Gallery or its insurer, AXA, pay him an amount that he believed was equal to the full value of the work or risk being publicly disparaged by him in the art-world. (Complaint ¶ 16.) Several weeks later, Gelb's attorney upped the non-negotiable demand to $125,000, and stated that the consequences of failing to accede to the demand would be a lawsuit seeking in excess of $200,000. (Complaint ¶ 16; Adelman Dec., **Exhibit C**.) Along with the non-negotiable demand, Gelb included a draft complaint against James Cohan Gallery, LLC. (Adelman Dec., **Exhibit C**.)

AXA, the Gallery's insurer, believes that the damage constitutes a partial loss under the insurance policy it issued (the "Policy") and with the Gallery, accordingly filed this action for declaratory judgment (the "New York Lawsuit"). (Complaint ¶ 12.) Gelb then initiated an action in Florida (the "Florida Lawsuit") alleging that the Work was destroyed by the Gallery and that he is entitled to damages in excess of $200,000. (Adelman Dec., **Exhibit D**.) Service of the Summons and Complaint was made on Gelb pursuant to the laws of the State of New York. (*See* Ronald W. Adelman, Certificate of Service, filed April 12, 2012 ("Certificate of Service").)

## ARGUMENT

### I. This Court has Personal Jurisdiction Over Gelb

"Where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, No. 06 Civ. 6510, 2010 WL 2813617, at *4 (S.D.N.Y. July 16, 2010). 28 U.S.C. § 2201, upon which Plaintiffs' seek relief, does not provide for national service of process. Therefore, the personal jurisdiction rules of New York's CPLR apply.

The general rule, when no discovery has been completed, is that a "plaintiff need only make a *prima facie* showing of jurisdiction at the motion to dismiss stage." *Altvater Gessler-J.A. Baczewski Intern. (USA) Inc.*, 2010 WL 2813617, at *3. New York's CPLR provides that a court may exercise personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). Section 302(a)(1) requires a court to determine "(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action aris[es] from such a business transaction." *Best Van Lines v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

3

Gelb admits that he negotiated the terms of the consignment agreement through series of phone calls and e-mails with the Gallery, at its New York location, with the intention of coming to terms on an agreement that would allow the Gallery to sell the Work in New York on Gelb's behalf. (Defendant's Memorandum of Law in Support of Motion to Dismiss dated April 27, 2012 ("Gelb Memo of Law"), at pg. 2, ¶ 4.) Through a previous consignment agreement, Gelb had already delivered the Work and two additional artworks to the Gallery's New York location. This Court has recognized that sufficient contacts with New York exist, for purposes of personal jurisdiction, where a party has shipped a painting from New York following negotiation of a purchase agreement through phone and e-mail. *See Brown v. Mitchell-Innes & Nash, Inc.*, No. 06 Civ. 7871, 2009 WL 1108526, at *3 (S.D.N.Y. Apr. 24, 2009) ("Defendants have purposely availed themselves of the privilege of conducting business in New York by calling and e-mailing…several times over a period of several weeks to negotiate the purchase of a painting located in New York."); *see also Parke-Bernet Galleries, Inc. v. Franklyn*, 308 N.Y.S.2d 337, 341 (N.Y. 1970) (personal jurisdiction existed where defendant was on telephone placing bids through auction house agent in New York). Gelb cannot dispute that he "suppl[ied] goods…in the state" pursuant to the consignment agreements he entered into. N.Y. C.P.L.R. § 302(a)(1). Similarly, Plaintiffs' cause of action undoubtedly arises from the "business transaction" that caused the Work to be delivered to New York. *Best Van Lines*, 490 F.3d at 246.

Gelb's assertion that he is not subject to personal jurisdiction in New York is based on misrepresentations of Plaintiffs' Complaint and arguments that have no basis in law. Gelb states that the "cause of action alleged in the Complaint is based upon the wholly different [Policy]." (Gelb Memo of Law at pg. 9.) In fact, the cause of action is premised primarily on the calculation of damages under the consignment agreement between Gelb and the Gallery. Gelb

4

also asserts that "none of the Consignment Agreement negotiations were conducted in New York. The agreement was negotiated with the GALLERY's agent, Laurie Harrison, via telephone and internet." (Gelb Memo of Law at pg. 10.) Gelb's position appears to be that negotiations took place in the "ether" of the internet and phone lines even though Laurie Harrison was present in New York throughout the negotiations. This position has consistently been rejected by New York courts. *See Brown*, 2009 WL 1108526, at *3; *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 818 N.Y.S.2d 164 (N.Y. 2006) (personal jurisdiction existed where out-of-state trader placed call to New York broker to make trades).

To support his position, Gelb incorrectly cites to a series of cases that addressed personal jurisdiction under NY CPLR 301, New York's "general jurisdiction" statute. *See JLB Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547 (S.D.N.Y. 2001) ("***Section 301***, as construed by the New York courts, permits the general exercise over a foreign corporation if it is 'engaged in such a continuous and systematic course of doing business as to warrant a finding of its presence in this jurisdiction'") (emphasis added). Gelb's assertion that Plaintiffs must show that Gelb engaged in business "with some degree of permanence and continuity" (Gelb Memo of Law at pg. 9), is similarly based on personal jurisdiction requirements under Section 301. *Daewoo Int'l (America) Corp. v. Orion Eng'g and Serv. Inc.*, No. 02 Civ. 8809, 2003 WL 22400198, at *1 (S.D.N.Y. Oct. 20, 2003) ("To establish jurisdiction under § 301, plaintiff must show that defendant…is engaged in business in the state with some degree of permanence and continuity.") Because the Plaintiffs do not allege general jurisdiction over Gelb pursuant to Section 301, those cases are not relevant.

Gelb has purposely availed himself of the privilege of doing business in New York through the consignment agreements he entered into with the Gallery. Moreover, the alleged

5

property damage occurred in New York. As Plaintiffs' cause of action is based upon those consignment agreements, this Court has personal jurisdiction over Gelb and should not dismiss the Complaint.

## II.    This Court has Subject Matter Jurisdiction Over This Action

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977) (holding that the statutory requirement was met when measured "by the losses that will follow"). The Second Circuit has similarly held that, for the purposes of 28 U.S.C. § 1332(a), "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975). Thus, it is the difference between what Plaintiffs seek to limit damages to and what Gelb claims as damages that the amount in controversy is calculated by. *See Beacon Constr. Co.*, 521 F.2d at 399 (potential liability was in excess of statutory requirement despite plaintiff only requesting relief in the amount of $3,516).

Gelb's assertion Plaintiffs have failed to meet the amount in controversy requirement of 28 U.S.C. § 1332(a) is without merit. Gelb has demanded payment from the Gallery in amounts ranging from $92,500 to in excess of $200,000 for the minor damage to the Work. (Complaint ¶ 16.) The Gallery and AXA have consistently maintained that Gelb's damages are limited to the several hundred dollars it will take to repair the damage to the Work. (Complaint ¶ 14.) No matter which of Gelb's damages claims the amount in controversy is measured from, the amount is always greater than the $75,000 required by 28 U.S.C. § 1332(a). Therefore, there is no basis

6

to dismiss Plaintiffs' Complaint on the grounds that this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332(a).

## III.    Gelb was Properly Served with the Summons and Complaint Under New York Law

Pursuant to NY CPLR 308(2), personal service is accomplished by "delivering the summons… to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by…mailing the summons to the person to be served at his or her last known residence." N.Y. C.P.L.R. 308(2). Despite Gelb's efforts to avoid being served with the Summons and Complaint, service of process was validly effected under CPLR 308(2).

On April 5, 2012, a process server went to Gelb's condo to serve him with the Summons and Complaint in this action. (Certificate of Service, Affidavit of Reginald Mashack, dated April 11, 2012.) Despite being told by Gelb's doorman that Gelb was home, hearing a male in Gelb's condo talking on the phone and observing a person look through the peephole of Gelb's door, the person inside refused to answer the door. (*Id.*) Only after returning three more times to Gelb's dwelling place and having been informed that Gelb was not home, did the process server leave the summons and complaint with Gelb's doorman. (*Id.*) Copies of the Summons and Complaint were mailed to Gelb's dwelling place on April 6, 2012 and April 9, 2012. (*Id.*)

While courts have occasionally held that service of process upon a doorman is insufficient, those cases require a particular set of pre-conditions to exist. *See Fed. Home Loan Mortg. Corp. v. 666 St. Nicholas Assoc.*, No. 94 Civ. 4537, 1995 WL 628998, at *3 (S.D.N.Y. Oct. 25, 1995) (service on person of suitable age and discretion improper where no effort was made to identify address as defendant's residence); *McCormack v. Goldstein*, 611 N.Y.S.2d 185,

7

186 (1st Dep't 1994) (service improper where "permission to enter the building was never requested.").

The above cited cases, referenced by Gelb in his motion papers, do not take into account instances where a defendant has resisted service of process or is clearly not home. "On numerous occasions, in circumstances similar to those before us, where a process server has not been permitted access to the specified apartment *or is advised that the intended party is not home*, a doorman has been found to be such a person of suitable age and discretion within the contemplation of CPLR 308(2)." *Charnin v. Cogan*, 673 N.Y.S.2d 134, 137 (1st Dep't 1998) (emphasis added) (citing cases) ("we find that service upon [defendant's] doorman conformed to the requirements of CPLR 308(2) and should be upheld.") Based on Gelb's undisputed resistance to accepting service and Gelb's absence from his residence on each occasion after the process server initially attempted service, the process server properly served the necessary papers on Gelb's doorman.

## IV. There is No Basis to Dismiss Plaintiff's Complaint under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations." *Itakura v. Primvera Galleries Inc.*, No. 08 CV 9027, 2009 WL 1873530, at *1 (S.D.N.Y. June 30, 2009) (referencing *Erickson v. Pardus,* 551 U.S. 89 (2007)). While Gelb puts forth a series of assertions (much of which he previously raised in his papers opposing Plaintiffs' motion to enjoin) to support his claim that the Complaint should be dismissed *with prejudice*, none of his arguments satisfy the legal standard for a Rule 12(b)(6) motion.

8

### A. Plaintiffs Have Standing to Seek a Declaratory Judgment Against Gelb

"The pleadings should be made to reveal and assert the actual interest of the plaintiff, and to indicate the interests of any others in the claim." *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 382 (1949). Gelb incorrectly attempts to portray the Gallery and AXA as having no standing to assert a cause of action against him because "nowhere in the Consignment Agreement is AXA or 242[3] ever identified." (Gelb Memo of Law at pg. 14.) The reality is that the Gallery is the real party in interest to the consignment agreement and, as such, is required by Rule 17(a) to prosecute this action. *See* FED. R. CIV. P. 17(a). AXA, as the issuer of the Policy under which the Work was insured, also has an interest in this action since its rights and liabilities depend on the liability of the Gallery to Gelb. *See Aetna Cas. & Sur. Co.*, 338 U.S. at 382. As such, both the Gallery and AXA have standing to bring the Complaint against Gelb.

### B. New York Insurance Law § 3420 Does Not Apply to this Matter

In addition to his privity arguments, Gelb again raises an argument from his papers opposing Plaintiffs' motion to enjoin by asserting that neither AXA nor the Gallery has standing to bring an action pursuant to New York Insurance Law § 3420. As Plaintiffs previously addressed, Section 3420(a)(2) only addresses the circumstances under which a third party can bring an action against an insurer to recover a judgment against the insured. *See* N.Y. INS. LAW § 3420(a)(2). Section 3420 does not address the standing of an insurer to seek a declaration of its liability to a third-party that it may be liable to through its insured.

---

[3] As previously noted, James Cohan Gallery is a d/b/a name registered and used by Plaintiff 242 Partners, L.P., a New York limited partnership. Based on his papers, it appears that Gelb somehow believes (incorrectly) that there are two separate entities, the "GALLERY" and "242." In fact, there is only one. Whether or not Gelb was aware of the name of 242 Partners, he knew that James Cohan Gallery was part of a corporate entity.

9

When interpreting Section 3420, the New York Court of Appeals specifically noted that "an insurance company that disclaims in a situation where coverage may be arguable is well advised to seek a declaratory judgment concerning the duty to defend or indemnify the purported insured." *Lang v. Hanover Inc. Co.*, 787 N.Y.S.2d 211, 214-15 (N.Y. 2004). While AXA has not disclaimed coverage, the reasoning in *Lang* is applicable here as AXA seeks to avoid "the risk that the injured party will obtain a judgment against the purported insured and then seek payment pursuant to Insurance Law § 3420." *Id* at 215. Since New York courts have acknowledged an insurer's ability to seek a determination of its obligations[4] to an injured party through a declaratory judgment action, Gelb's claim that this Court should extend the statutory limitations of Section 3420 not only to insurers such as AXA, but to the Gallery as well, is baseless.

### C. The Later-Filed Florida Lawsuit is Not a Basis for Dismissing This Action

Gelb also raises for a second time his arguments concerning the applicability of the "first-filed rule."[5] As previously noted, "the mere fact that an action is brought as one for a declaratory judgment 'does not necessarily [mean that it] constitute[s] an anticipatory filing for purposes of an exception to the first filed rule.'" *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) (citations omitted).

There is no question that this Court has the discretion to create an exception to the first-filed rule if circumstances warrant. Such circumstances include a lawsuit filed while the parties

---

[4] Throughout his motion papers, Gelb claims that Plaintiffs seek "the power to limit GELB's right to seek damages against the tortfeasor." (Gelb Memo of Law, pg. 18.) While none of these statements are relevant to any of the grounds Gelb raises in support of his motion to dismiss, Plaintiffs feel compelled to note that the actual purpose of this action is to determine whether Gelb can recover damages *in excess of his actual damages* in the absence of a contractual provision expressly granting him such a remedy.

[5] As these issues were briefed at length in the papers supporting and opposing Plaintiffs' motion to enjoin, Plaintiffs will only briefly summarize why dismissal is inappropriate on these grounds.

are in the middle of settlement negotiations. *Ontel Products*, 899 F. Supp. at 1150-51, and when the filing breaches an understanding between the parties that no action will be commenced before a given date. *Great American Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990). Another such circumstance occurs when there are additional related actions pending in the second-filed jurisdiction. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978), and when the factors relevant to a § 1404(a) transfer analysis are decidedly in favor of the second-filed forum. *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 133-36 (S.D.N.Y. 1994).

This Court has previously addressed a situation similar to the present one when it held that a "declaratory judgment is appropriate, 'particularly where the delay in seeking judicial intervention will cause substantial prejudice to the declaratory judgment plaintiff.'" *800-Flowers, Inc,* 860 F. Supp. at 133 (citing *Great American Ins. Co.*, 735 F. Supp. at 585). In fact, the Court in *800-Flowers* specifically noted that a party had a "legitimate and meritorious rationale for seeking declaratory judgment" "in response to the disparaging remarks made by [the opposing party]." *800-Flowers*, 860 F. Supp. at 133. Gelb's threat to "let everyone in the art community know about your methods of conducting business" should the Gallery to fail to accede to his demands, is precisely the type of "disparaging remarks" that the Gallery had a right to protect its business from.

While the "improper anticipatory filing" exception exists to prevent a party from choosing a different forum while its adversary attempts settlement discussions, it does not serve to "simply change the proverbial 'race to the courthouse' into the race to the post office." *Ontel*, 899 F. Supp. at 1151. Presently, Gelb seeks to use a bad-faith "notice letter" to escape the first-filed rule. Gelb's reference to this letter as a "professional courtesy" despite its non-negotiable

11

demand for more money than Gelb would have been entitled to in the event of a sale and refusal to respond to communications from Plaintiffs' counsel is disingenuous, to say the least. (Gelb Memo of Law at pg. 14.) This Court has clearly held that a declaratory judgment filing can be proper even when "the available evidence supports the proposition that [plaintiff] filed this action in the Southern District of New York in anticipation of [defendant] bringing suit elsewhere." *Ontel*, 899 F. Supp. at 1150. Plaintiffs properly brought the New York Lawsuit on the basis of Gelb's threats and, thus, this action should not be dismissed as an improper anticipatory filing.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny Gelb's motion to dismiss.

Dated: New York, New York
       May 11, 2012

                                          **LYNN & CAHILL LLP**

                                          _____
                                          John R. Cahill
                                          Ronald W. Adelman
                                          58 West 40th Street
                                          New York, NY 10018
                                          (212) 719-4400

                                          *Attorneys for Plaintiffs*